IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BARBARA WILKINSON; HARRY SMITH, II;
RAYMOND FLOWERS; MANCE FOWLER;
ETHEL FOWLER; CAROLYN NICHOLS;
WANDA MORGAN; MARY WINTERS;
LARETHA PLUNKETT; and CARMEN STINSON                PLAINTIFFS

v.                              Case No. 2:13-CV-02228

WHIRLPOOL CORPORATION; and
KENNETH THOMPSON                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiffs' motion to remand (Doc. 14) and brief in support (Doc. 15);

Defendant Whirlpool Corporation's ("Whirlpool") response in opposition (Doc. 16); and Plaintiffs'

reply (Doc. 19).  For the reasons discussed herein, Plaintiffs' motion to remand (Doc. 14) is

DENIED.

I.      **Background**

This action for environmental property damage is brought by homeowners residing near the

former Whirlpool manufacturing facility in Fort Smith, Arkansas.[1]  Plaintiffs collectively allege that

Whirlpool and Whirlpool employee Kenneth Thompson are responsible for damages caused by the

contamination of groundwater below their residential properties.  The amended complaint identifies

the cause of the contamination as emissions of trichloroethylene ("TCE"), an industrial solvent, used

in the manufacturing process at the Whirlpool plant beginning in 1967.  Sometime in the 1980s,

Defendants learned about the presence of TCE in the groundwater when they removed an

underground petroleum storage tank at the facility.  Plaintiffs now seek to recover damages in tort

---

[1]  Whirlpool ceased manufacturing operations in Fort Smith in June of 2012.

-1-

for trespass, nuisance, and negligence resulting from the TCE contamination.  They also assert a private right of action pursuant to the Arkansas Solid Waste Management Act ("ASWMA"), Ark. Code Ann. 8-6-201, *et seq.*

The original complaint was filed in the Circuit Court of Sebastian County, Arkansas, on May 23, 2013, naming Whirlpool as the sole defendant.  On September 11, 2013, Plaintiffs filed an amended complaint adding Thompson, an Arkansas citizen, as a defendant in state court.  Whirlpool was served with a copy of the summons and amended complaint on September 12, 2013.  On October 11, 2013, Whirlpool, with the consent of Thompson, removed the case to this Court, maintaining that Thompson had been fraudulently joined in the state court action to defeat federal diversity jurisdiction.  Plaintiffs then filed the instant motion to remand the case back to state court on November 7, 2013, denying that Thompson was fraudulently joined and asserting that colorable claims had been asserted against him.

The amended complaint specifically charges Thompson with having had "a duty to inspect and maintain the facility, prevent spills and releases of TCE, discover and delineate the TCE plume, remediate the TCE plume, prevent the spread of the TCE plume, and warn or inform of the TCE plume."  (Doc. 5, p. 3).

## II.     Legal Standard

The parties agree that Plaintiffs and Defendant Thompson are all citizens of Arkansas, while Whirlpool is a citizen of both Delaware, its place of incorporation, and Michigan, its principal place of business.  28 U.S.C. § 1332(c)(1); Docs. 1, 5.  As Plaintiffs and Thompson are citizens of the same state, Thompson's presence in the litigation defeats federal diversity jurisdiction.  *See* 28 U.S.C. § 1332(a)(1).  Whirlpool removed this case to federal court arguing (1) Thompson was

fraudulently joined in the state court action to defeat federal diversity jurisdiction; (2) Thompson should therefore be dismissed as a Defendant; and (3) once Thompson is dismissed, subject matter jurisdiction in this Court will be proper due to the presence of complete diversity of citizenship among the remaining parties.

"[A] plaintiff cannot defeat a defendant's 'right of removal' by fraudulently joining a defendant who has 'no real connection with the controversy.'" *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011) (quoting *Chesapeake & Ohio Ry Co. v. Cockrell*, 232 U.S. 146, 152 (1914)). Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal. *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003). To prove fraudulent joinder, the removing defendant must show that there is no "'reasonable basis for predicting that the state law might impose liability based upon the facts involved.'" *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 446 (8th Cir. 2010) (quoting *Filla*, 336 F.3d at 811). "Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent . . . However if there is a 'colorable' cause of action—that is, if the state law *might* impose liability on the resident defendant under the facts alleged—then there is no fraudulent joinder." *Filla*, 336 F.3d at 810 (emphasis in original).

In this case, determining whether a colorable cause of action exists in tort against an individual employed by a corporation is an issue of Arkansas law. The Arkansas Supreme Court has concluded that "[w]hen it can be shown that an individual employed by a corporation is personally involved in the events surrounding an injury, the individual may be sued." *McGraw v. Weeks*, 326 Ark. 285, 294 (1996). However, when there is no evidence that an employee is "directly involved in the events surrounding the injury or that he was acting in any capacity other than as a corporate

officer when the accident occurred . . . there is nothing on which to premise individual liability . . . ." *Cash v. Carter*, 312 Ark. 41, 47 (1993).

With respect to Plaintiffs' asserted private right of action pursuant to the ASWMA, Ark. Code Ann. § 8-6-205(a)(5) states that "[i]t shall be illegal for any person . . . to sort, collect, transport, process, or dispose of solid waste . . . in such a manner or place as to create or be likely to create a public nuisance . . . or to cause or be likely to cause water or air pollution within the meaning of the Arkansas Water and Air Pollution Control Act, § 8-4-101 et seq." In addition, § 8-4-205(c) clarifies that "[n]o person shall be liable for any violation of this subchapter . . . if the violation results solely from the act or omission of a third party, unless the person has knowingly allowed the violation to occur through acquiescence, acts, or omissions."

## III.    Discussion

After due consideration, the Court finds that there is no reasonable basis for predicting that Arkansas law might impose liability on any claim asserted by Plaintiffs against Thompson. In coming to this conclusion, the Court has relied upon the facts asserted in the amended complaint and the affidavit testimony of Thompson (Doc. 1, pp. 15-18) and Whirlpool's Director of Environmental, Health and Safety for the North American Region, Robert J. Karwowski (Doc. 1, pp. 10-14; Doc. 20-1). The statements made in Thompson and Karwowski's affidavits regarding the timing and nature of Thompson's employment with Whirlpool have not been challenged by Plaintiffs, despite the fact that Plaintiffs had ample opportunity to dispute these statements and offer their own contrary proof in the course of briefing their motion to remand and replying to Whirlpool's brief in opposition.

-4-

The two affidavits submitted by Whirlpool show that Thompson's title when he worked at the Fort Smith plant was "plant leader," not "plant manager," as the amended complaint claims. Furthermore, Thompson only worked as plant leader from April 2007 through December 2011, during which time he was "responsible for overseeing the day-to-day production aspect of assembly line operations." From his job description and explanation of his day-to-day job functions, it does not appear that Thompson had direct, indirect, personal, or corporate-level involvement in the release, detection, or cleanup of TCE at any time during the five years he worked at the Fort Smith plant.

In an apparent attempt to neutralize the effect of Thompson and Karwowski's affidavits, Plaintiffs suggest that it is improper for the Court to consider the affidavits at all. Plaintiffs' maintain that, in submitting these affidavits, "Whirlpool improperly requests that the Court delve into the merits of plaintiffs' case." (Doc. 15, p. 2). This contention, however, is simply inaccurate, as the affidavits themselves are limited to providing facts pertinent to the Court's fraudulent joinder analysis, rather than the merits of Plaintiffs' claims. The affidavits describe the time periods during which Thompson worked at the Fort Smith plant and the scope of Thompson's job duties, responsibilities, and authority at the plant, which are facts essential to the Court's determination as to whether a colorable claim has been asserted against Thompson.

In evaluating whether state law might impose liability on Thompson, the Court is not obligated to accept as true the facts alleged in the amended complaint when it is presented with undisputed evidence to the contrary. The Court is permitted to examine affidavits and "material beyond the complaint's allegations" in evaluating a claim of fraudulent joinder "to determine if there is any factual support for the claims against the allegedly fraudulently joined defendant." *Block v.*

-5-

*Toyota Motor Corp.*, 665 F.3d 944, 948 (8th Cir. 2011) (internal quotation and citation omitted); *Sid Richardson Carbon & Gasoline Co. v. InterenergyResources, Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996) (in evaluating a claim of fraudulent joinder "the district court may 'pierce the pleadings' to examine affidavits and other evidentiary material"); *see also Petersen v. Rusch, Inc.*, 2006 WL 83492, *2 (E.D. Mo. Jan. 12, 2006) (analyzing cases decided within the Eighth Circuit in support of allowing affidavit evidence to be considered in fraudulent joinder inquiry).

As an initial matter, it appears that the amended complaint contains certain assertions regarding Thompson's employment with Whirlpool that are demonstrably inaccurate. For example, Plaintiffs allege that Thompson is "the current plant manager at the facility . . . responsible for environmental compliance and other related matters . . . [with] a duty to inspect and maintain the facility, prevent spills and releases of TCE, discover and delineate the TCE plume, remediate the TCE plume, prevent the spread of the TCE plume, and warn or inform of the TCE plume." (Doc. 5, pp. 2-3). However, Thompson is not currently the plant manager and has not worked in the Fort Smith plant for approximately two years. Since January of 2012, Thompson has worked as Senior Director for the North American Lean Integrated Supply Chain for Whirlpool, with no direct involvement with the Fort Smith plant. Furthermore, Thompson's job as "plant leader" tasked him with overseeing assembly line operations within the plant, not managing the cleanup, monitoring, and reporting of TCE contamination. (Doc. 1, p. 16).

The amended complaint also incorrectly states that Thompson supervised the operations of the plant that "resulted in, or further exacerbated, the TCE plume." (Doc. 5, p. 2). However, Whirlpool first began using TCE in the manufacturing process at the Fort Smith facility beginning in approximately 1967 and subsequently "learned about the presence of TCE in the groundwater . . .

in the 1980s," decades prior to the time that Thompson was employed in Fort Smith. *Id.* at pp. 3-5. Thompson did not begin overseeing the assembly line operations in Fort Smith until 2007, well after the release of TCE was alleged to have occurred and been discovered by Whirlpool. (Doc. 1, p. 16).

The amended complaint claims that after TCE was removed from the manufacturing process, Whirlpool began testing, monitoring, and determining the extent of the release of TCE in and around the plant. Plaintiffs contend that "[i]n the early 2000's defendants determined that the TCE plume extended to the north of the facility, under the properties owned by plaintiffs." (Doc. 5, p. 4). At some point thereafter, Whirlpool developed and implemented a "corrective action plan" to address the TCE contamination, which involved submitting status reports to the Arkansas Department of Environmental Quality ("ADEQ") regarding groundwater monitoring. *Id.* Thompson, however, had no responsibility for the investigation and remediation of environmental contamination at the Fort Smith plant, nor did he have any direct or personal contact with any state, federal, or local environmental officials, including the ADEQ. (Doc. 1, p. 16).

As for Karwowski's affidavit, it provides further support for the conclusion that Thompson had no direct, personal authority or involvement related to addressing environmental contamination matters at the Fort Smith plant. Karwowski testifies that the alleged acts and omissions asserted against Thompson in the amended complaint "are entirely outside of the duties, responsibilities, and authority of the Plant Leader at Ft. Smith or any Whirlpool manufacturing facility or operating division." (Doc. 20-1, p. 4). Karwowski also affirms that "[e]fforts related to addressing environmental contamination at Whirlpool facilities in North America are handled separately from the manufacturing decisions related to those facilities." (Doc. 20-1, p. 2). Karwowski is the Whirlpool officer responsible for overseeing the investigation and remediation efforts for all

environmental contamination issues at Whirlpool North American plants, including the Fort Smith plant. In his capacity as Director of Environmental Health and Safety, Karwowski acknowledges that "Mr. Thompson specifically would not have had and did not have any involvement or authority in addressing the TCE plume associated with the Fort Smith facility at any time." *Id.* at p. 4.

Plaintiffs urge the Court simply to ignore the affidavits as "self-serving" but fail to offer any facts or argument that indicate what, if any, personal responsibility Thompson has for their alleged injuries. They argue that Thompson and Karwowski's affidavits show "[a]t the least" that "Thompson did nothing to stop or warn of the contamination." (Doc. 15, p. 2). However, any failure to act by Thompson is only meaningful to a fraudulent joinder analysis if the nature of Thompson's employment created an affirmative duty to act. This principle of law is well demonstrated in the case Plaintiffs rely on most heavily in their brief supporting remand, *Duncan v. Exxon Mobil Corp.*, 2013 WL 5105759 (E.D. Ark. Sept. 13, 2013). In *Duncan*, the district court held that a maintenance and operations technician for the ExxonMobil Pipeline Company was properly joined as an individual defendant in an environmental contamination case involving a ruptured oil pipeline. *Id.* at *3. The pipeline worker was a proper defendant—even though he had no managerial or supervisory responsibilities in the company—because he "was responsible for the pipeline's electrical maintenance and repair and his failure to adequately inspect and repair the pipeline caused the pipeline's rupture." *Id.*

The *Duncan* court observed that under Arkansas law, "when it can be shown that an individual employed by a corporation is personally involved in the events surrounding an injury, the individual may be sued." *Id.* (citing *Bayird v. Floyd*, 2009 Ark. 455, at *6 (2009)). The court then concluded that even though the pipeline worker had no involvement in the corporate-level decision-

making process regarding the pipeline's flow or capacity, the worker's day-to-day responsibilities on the job included the inspection, maintenance, and repair of the pipeline. Because the pipeline that he was directly responsible for inspecting, maintaining, and repairing ruptured and caused damage to the plaintiffs, the facts were sufficient to show that the worker's acts or omissions might have proximately caused damage. *Id.*

The extent of the pipeline worker's potential liability in *Duncan* is not at all like Thompson's in the instant matter, as there are no facts to show that Thompson did anything other than manage day-to-day assembly line operations at the Fort Smith plant over a five-year period *after* Whirlpool stopped using TCE in manufacturing and *after* Whirlpool discovered TCE in the groundwater near the plant. Thompson had no involvement on a managerial level or as a corporate officer with any decision-making related to environmental contamination caused by TCE. The Court cannot find, therefore, that the facts indicate that Thompson had any personal involvement in the events surrounding Plaintiffs' alleged injuries, including the release, contamination, monitoring, cleanup, or reporting of TCE or other chemicals in and around the Fort Smith Whirlpool facility. Consequently, any state law torts asserted against Thompson are not colorable claims. Any action pursuant to the ASWMA is similarly not colorable against Thompson since he had no personal involvement in solid waste collection, transport, processing, or disposal.

Due to the fact that no reasonable basis exists for predicting that the state law might impose liability on Defendant Thompson for any claim asserted against him by Plaintiffs, the Court finds that Thompson was fraudulently joined.

**IV.    Conclusion**

Due to the Court's finding of fraudulent joinder, IT IS ORDERED that all claims against Defendant Kenneth Thompson are DISMISSED WITH PREJUDICE, and Thompson is DISMISSED as a party to this lawsuit. Without Thompson's presence in this case as a Defendant, there is complete diversity of citizenship of the remaining parties, and federal subject matter jurisdiction over this case is therefore proper pursuant to 28 U.S.C. § 1332(a)(1).  Plaintiffs' motion to remand for lack of diversity (Doc. 14) is accordingly DENIED.

IT IS SO ORDERED this 10th day of January, 2014.

/s/ P. K. Holmes, III

P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE